HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HEATHER BELINDA SINGLETON,

    Plaintiff,

    v.

BANK OF AMERICA, N.A., et al.,

    Defendants.

CASE NO. C11-1247RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss (Dkt. # 46) and the response of Plaintiff's counsel to the court's April 12, 2012 order to show cause. Although the parties requested oral argument, the court finds oral argument unnecessary. For the reasons stated herein, the court GRANTS the motion to dismiss, dismisses Plaintiff's complaint, directs the clerk to enter judgment for Defendants, and awards monetary sanctions against Plaintiff's counsel.

## II.  BACKGROUND

This suit arises from Plaintiff Heather Singleton's purchase of real property in Yelm, Washington in 2006. She took out two mortgages to make the purchase. Since then, her loan has passed from her initial lender to various successors. In April 2011, Defendant Bank of America, N.A. ("BofA"), one of those successors, declared Ms.

ORDER – 1

Singleton to be in default. So far as the record reveals, no one has attempted to foreclose on Ms. Singleton's property.

Now before the court is the third attempt of Ms. Singleton's counsel to state cognizable claims arising from her mortgages.[1] Counsel filed the original complaint in July 2011 but did not serve any Defendant. He filed a first amended complaint in November 2011. That complaint was a 321-page labyrinth of cumulative allegations, needless citation to a cornucopia of immaterial extraneous sources, improper requests for judicial notice, irrelevant assertions, unnecessary recitations of legal theories, and other defects. Defendants moved to strike the complaint and requested a more definite statement. The court granted that motion in an April 12 order that identified many of the deficiencies in the complaint, granted leave to amend, and ordered Ms. Singleton's counsel to show cause why the court should not sanction him.

Counsel filed an amended complaint and responded to the order to show cause. The amended complaint was, commendably, much shorter than its predecessors. It weighs in at 30 pages. As a consequence, Defendants were able to formulate a response, this time in the form of a motion to dismiss the complaint for failure to state a claim. The court will consider the motion to dismiss first, then address counsel's response to the order to show cause.

### III.   ANALYSIS

**A.     Motion to Dismiss**

Defendants invoke Fed. R. Civ. P. 12(b)(6), which permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from its allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must

---

[1] The court continues to attribute responsibility for Ms. Singleton's complaint to her counsel. Counsel has not suggested that Ms. Singleton bears any responsibility for these pleading deficiencies.

ORDER – 2

point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief.  *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The complaint now before the court purports to state claims against four Defendants:  BofA, ReconTrust Company, N.A. ("ReconTrust"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and U.S. Bank, N.A. ("U.S. Bank").  Counsel's task, therefore, is to provide a "short and plain statement" of the reasons that these Defendants are liable to Ms. Singleton.

Instead, counsel has once again wandered far afield from his basic pleading duties.  Although the complaint before the court has cured some of the ailments of his previous pleadings, most notably in its comparative brevity, it has not stated a claim against any of these Defendants.  To explain that conclusion, the court need only follow counsel's complaint page by page, using bare "¶" symbols to cite specific paragraphs.

The first six pages of the complaint contain generic information about some of the Defendants, along with a description of what counsel views as "predatory lending" practices.  These pages do not contain a single allegation about counsel's client, Ms. Singleton.  These first six pages do not in any way explain her claims.  The first assertion about Ms. Singleton comes at the conclusion of the sixth page.  ¶ 18.

ORDER – 3

The first assertion relevant to Ms. Singleton is that the deeds of trust she executed when she took out her loans in 2006 name MERS as the beneficiary. From that premise, counsel again leaves his client behind, expending another four pages of the complaint discussing MERS's national role in mortgage transactions and pointing out that MERS's authority to act on behalf of mortgage lenders has been challenged in numerous lawsuits. These pages do nothing to explain what, if anything, MERS did to Ms. Singleton.

Counsel returns to his client's plight on the eleventh page of the complaint. For the next eight pages, counsel describes his client's original 2006 loan and explains his belief that the original lender put her in a dreadful position. According to him, the original lender overstated her income in order to qualify her for two adjustable-rate mortgages with extremely unfavorable terms. Whatever the merits of those allegations, they have nothing to do with the Defendants now before the court. Ms. Singleton's original lender is not a defendant in this case, and counsel does not offer any plausible allegations that would make any of the four Defendants liable for the original lender's misdeeds.

Not until the eighteenth page of the complaint does counsel explain that at some point, BofA took over Ms. Singleton's loans. The complaint does not explain when BofA took over the loans, nor does it explain how BofA acted unlawfully by taking over the loans.

On the twentieth page of the complaint, counsel explains that BofA notified Ms. Singleton in 2011 that she was in default on both of her loans, and gave notice of its intent to accelerate the payment of the principal balance in accordance with the note and deed of trust. There is no allegation that this action was unlawful. There is, for example, no allegation that Ms. Singleton was not actually in default. The page concludes with an allegation that merely receiving Ms. Singleton's mortgage payments was "obtaining the receipt of monies . . . by fraud, conversion, and false pretenses across federal interstate

ORDER – 4

boundaries." ¶ 68. There is no explanation at all of how BofA's receipt of mortgage payments could be considered fraudulent.

The twenty-first page of the complaint discusses ReconTrust, alleging that ReconTrust frequently acts as a trustee on Washington deeds of trust. There is no allegation that ReconTrust acted as a trustee on Ms. Singleton's deed of trust. There is no allegation that ReconTrust had anything to do with Ms. Singleton.

Having so far accused no Defendant of any wrongdoing against his client, counsel uses the twenty-second page of the complaint to assert that BofA, MERS, and ReconTrust are "RICO Enterprise[s]." This marks the beginning of counsel's renewed efforts, over the next several pages, to weave the allegations of his complaint into violations of the Racketeer Influenced Corrupt Organizations Act (18 U.S.C. § 1961-68, "RICO"). Most of those pages, like those that came before them, make no attempt to explain what these Defendants did to Ms. Singleton. The few allegations that actually mention Ms. Singleton are inconsistent with even the complaint's version of reality. Here is one of those allegations:

> Plaintiff alleges that defendants knew that by promoting and offering the mortgages to plaintiff, specifically, "no-doc" mortgage loans, and also to similarly situated victims, that the *interest only* payments during the first five [5] years under the first mortgage [2006-2011], and similar payments under a balloon payment note due under the second mortgage, were in fact the result of engaging in predatory mortgage lending practices.

¶ 75 (emphases and bracketed language in original). The problem, once again, is that none of these Defendants "promot[ed] and offer[ed]" Plaintiff her mortgages.

Beginning at the twenty-fourth page of the complaint, counsel purports to enumerate three different RICO claims: one for a primary violation of the statute, another for aiding and abetting violations of the statute, and a third for conspiring to commit violations of the statute. Defendants' motion to dismiss offers many reasons that these allegations are defective. For the sake of simplicity, the court relies on only one. Counsel has utterly failed to state that any of the Defendants before the court did

ORDER – 5

anything unlawful to Ms. Singleton. Although RICO claims are typically complex, they are in one respect identical to any other statutory or common law claim—they require the plaintiff to show that the defendant did something to injure her. Counsel's complaint does not pass this threshold.

Moving away from counsel's failed RICO claims, the court considers the final two causes of action in the complaint: they invoke Washington's Consumer Protection Act (RCW Ch. 19.86, "CPA") and seek a declaratory judgment. In large part, these claims fail for the same reasons as the RICO claims that precede them—counsel continues to accuse Defendants of fraud, predatory lending, deception, and more, without ever explaining what it is that these Defendants have done unlawfully to Ms. Singleton.

There is one aspect of these final two claims that warrants additional attention: counsel's claim that MERS was not legally qualified to serve as the trustee on Ms. Singleton's deeds of trust. After the parties completed briefing on the motion to dismiss, the Washington Supreme Court decided that MERS is ineligible to serve as a beneficiary on a Washington deed of trust unless it also holds the promissory note that the deed secures. *Bain v. Metro. Mortgage Group, Inc.*, 285 P.3d 34, 47 (Wash. 2012). The *Bain* court considered, but declined to decide, what effect the unlawful designation of MERS as a beneficiary would have on a deed of trust. *Id.* at 47-49. The court rejected the notion that a deed of trust was void or voidable merely because it improperly designated MERS as a beneficiary. *Id.* at 48-49. The court did, however, hold open the possibility that a plaintiff could base a CPA claim on MERS's unlawful designation as a beneficiary. *Id.* at 49-52.

*Bain* has opened the door for a plaintiff to recover for harm that MERS causes when acting unlawfully as a beneficiary; counsel has failed to escort Ms. Singleton through that door. The complaint establishes that MERS was, at least initially, the beneficiary listed on Ms. Singleton's deeds of trust. But that is all the complaint

ORDER – 6

establishes.  It does not establish that MERS caused her any harm.  It does not establish that any other Defendant used MERS as a means to cause her harm.  The *Bain* court held that the "mere fact that MERS is listed on [a] deed of trust as a beneficiary is not itself an actionable injury."  285 P.3d at 52.  In this case, the complaint does not even reveal if MERS remains the purported beneficiary of Ms. Singleton's deeds of trust.  It is entirely possible that MERS's relationship with Ms. Singleton has already ended with no injury to Ms. Singleton.  Counsel has failed to state a CPA claim.

Counsel's claim for declaratory judgment regarding MERS's role fares no better.  Declaratory judgment is not available as a matter of right, it is an exercise of the court's discretion.  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).  In this case, the only declaratory judgment that the complaint would support is one that MERS was unlawfully designated as the initial trustee on Ms. Singleton's deeds of trust.  Ms. Singleton has no need for the court to make this declaration; the *Bain* court has already made it.  Her counsel has failed to explain how the court's declaratory judgment would have any actual impact on the controversy between her and the Defendants before the court.  The court accordingly declines to exercise its discretion to issue a declaratory judgment.

At the end of the court's journey through counsel's complaint, it finds no claim for relief against these Defendants.[2]  Counsel has now had three opportunities to state such claims.  He has not asked for another opportunity to amend the complaint, but the court would not grant it in any event.  With one exception, the court dismisses Ms. Singleton's claims against these Defendants with prejudice.  The court excepts only whatever claim Ms. Singleton might have based on MERS's role as the beneficiary on her deeds of trust.  The court does not suggest that Ms. Singleton has such a claim, it merely finds that in light of *Bain*, it will not bar her from remedying any harm that arose from MERS's role

---

[2] Defendants raised other arguments in support of their motion to dismiss.  The court need not address them in light of its decision today.

ORDER – 7

as the beneficiary on her deeds of trust.  The court dismisses any MERS-related claim without prejudice.

## B. Order to Show Cause, Sanctions

The court now turns to its order to show cause.  In response to that order, counsel was apologetic.  It mitigates in his favor that he replaced his 321-page complaint with the 30-page complaint that the court has considered in this order.  Counsel did not attempt to defend his unreasonably long complaint, he instead attributed it to his sincere desire to zealously represent his client.

Despite counsel's apologies, the court finds sanctions not merely appropriate, but necessary in this case.  In its prior order, the court detailed counsel's history of filing unreasonably long complaints in this District.  Despite the admonishments of many of this District's judges, counsel has persisted in filing complaints whose length alone makes them virtually impossible to answer.  Were it just a matter of the length of counsel's pleadings, the court might take a different view.  But the complaints are not merely long, they are all but impossible to comprehend.  The court explained some of the deficiencies in its prior order.  Even though counsel reduced the length of his complaint by more than 290 pages, he repeated many of the same mistakes.  Again counsel insists on the use of unnecessarily cumulative language.  The first paragraph of his current complaint illustrates as much.  He is not content to make "allegations," he "advances, alleges, articulates, asserts, contends, and complains . . . ."  He does not merely "state" claims, he declares them "specifically articulated and expressly enumerated and identified . . . ."  This court is hardly puritanical when it comes to following the Bluebook or any other citation convention, but counsel is alone among the attorneys who come before this court in refusing to use basic conventions of legal citation to make his complaint more legible.  Whereas every attorney who appears before this court is content to cite the United States Code in shorthand (*e.g.*, 18 U.S.C. § 1964), counsel invariably

ORDER – 8

offers cumbersome citations like "Title 18 United States Code § 1964." Despite admonishments from several judges, counsel continues to cite "Title 18 United States Code § 1964©," refusing to correct his complaint to refer properly to § 1964(c). Spelling, punctuation, and grammatical errors pervade counsel's complaint. It is rare for any attorney to cite cases in a complaint; counsel cites cases, law review articles, websites, and a host of other sources. Were he doing to in an effort to illuminate his claims, the court might accept the unusual approach. But counsel's citations serve only to obfuscate. Whereas other attorneys are content to cite cases when necessary, counsel insists on requesting that the court take judicial notice of cases. Counsel persists in the belief that citing the allegations of other complaints is a reasonable way to make allegations in his own complaint. As the court noted in its previous order, it could go on in listing counsel's improper practices. Instead, it concludes that if it does not impose sanctions, counsel will persist in those practices to the disservice of his clients, judicial economy, and the defendants he purports to sue.

      The court rarely has occasion to devote so much attention to an attorney's pleadings; but the court does so here for a simple reason: the effort required to draft pleadings in the fashion that counsel has chosen seems to have replaced the effort required to draft pleadings that actually state claims. Take, for example, counsel's decision to include ReconTrust as a Defendant in this case. There is not a single allegation in the complaint that ReconTrust did anything to Ms. Singleton, much less anything unlawful. The allegations of the complaint leave open the possibility that ReconTrust has never encountered Ms. Singleton in any capacity, and yet Ms. Singleton is suing ReconTrust. Why? Complaints are supposed to answer this basic question. Counsel's complaints do not.

ORDER – 9

The court cited 28 U.S.C. § 1927 as the basis for sanctioning counsel. There are other means by which the court could sanction him, including the court's inherent power. Nonetheless, the court focuses on § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An attorney violates § 1927 if he acts at least recklessly. *Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). Counsel's repeated refusal to heed the admonishments of other judges in this District, coupled with his refusal to heed many of the admonishments in this court's order to show cause, is more than sufficient to demonstrate reckless conduct.

Counsel points out that § 1927 typically does not apply to initial pleadings. *See Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1995). The court's order to show cause, however, stated that it would impose sanctions equal to the amount that Defendants spent on their motion to strike counsel's previous complaint. The sanctions the court is considering are not for counsel's initial complaint, they are for the costs that Defendants incurred to respond to the complaint. Counsel responded to the previous incarnation of the complaint by filing a simple, five-page motion to strike or for a more definite statement. Rather than acknowledge the myriad defects in his complaint, or at least acknowledge its unreasonable length, counsel responded to that motion by insisting that there was nothing wrong with the complaint. That necessitated Defendants' reply.

The court orders counsel to pay Defendants' attorney fees for filing their motion to strike and their reply. The parties shall meet and confer in an attempt to agree on the amount of those fees. If they agree, they shall notify the court in a joint submission no later than November 29, 2012. If they do not agree, Defendants may file a motion for attorney fees no later than November 29. The court will award additional attorney fees if

ORDER – 10

it determines that any party has taken an unreasonable position regarding the amount of attorney fees. Given the brevity of Defendants' counsel's motion to strike and reply brief, the court expects that the attorney fees will be relatively modest. The court emphasizes to Ms. Singleton's counsel that, if he persists in these practices, future sanctions will be heftier.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to dismiss, dismisses Plaintiff's complaint, and directs the clerk to enter judgment for Defendants. The court's dismissal is with prejudice to all claims except claims based on MERS's role as the beneficiary on Plaintiff's deeds of trust.

DATED this 19th day of November, 2012.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11